Jaime RIVERA–MUÑOZ,
et al., Plaintiffs,

v.

Eric K. SHINSEKI, U.S. Secretary of
Veterans Affairs, Defendant.

Civil No. 13–1302 (SEC)

United States District Court,
D. Puerto Rico.

Signed March 15, 2016

Jane A. Becker–Whitaker, Jane Becker Whitaker, PSC, San Juan, PR, for Plaintiff.

Lisa E. Bhatia–Gautier, United States Attorneys Office, District of Puerto Rico, San Juan, PR, for Defendant.

## OPINION & ORDER

SALVADOR E. CASELLAS, United States Senior District Judge

Pending before the Court is a motion for summary judgment filed by Defendant Eric Shinseki, Secretary for Veterans Affairs. Docket # 43. For the reasons that follow, Defendant's motion is **GRANTED**. Further briefing is ordered on the issue identified below.

### I. Background

The facts giving rise to this suit are largely undisputed, and are drawn from the parties' statements of fact.

Rivera worked as a health technician at the Audiology and Speech Pathology Service in the Veterans Affairs (VA) Caribbean Health System until he suffered a stroke on November 10, 2010. Rivera remained on leave from work for the period spanning late 2010 until his termination in July 14, 2012. See Docket 44 at ¶ 16. He spent the first few months of 2011 hospitalized, and on doctor's orders, spent the rest of that year resting at home. Id. at ¶ 3–5. Rivera was never able to return to work.

On April 12, 2012, Mr. Rivera submitted his application for disability benefits to the Human Resources Specialist in charge of the Retirement Section at the VA. Id. at ¶ 6. The doctor in charge of reviewing the application, Dr. Oscar Cardona Ramirez, determined that Rivera was disabled and unable to perform his duties at the VA hospital. Id. at ¶ 7. Plaintiffs complain that Rivera could have applied for disability benefits much earlier, even as of June 2011, but found it impossible because Defendant refused to accept a medical certificate from his doctor, and instead required Rivera's case to be reviewed by Dr. Cardona.[1]

On May 15, 2012, the VA sent Rivera a letter detailing the reasons for which he would be terminated. Id. at ¶ 12. Almost a month after receipt of this letter, and although he was not yet terminated from employment, Rivera filed a formal complaint with the EEOC. Id. at ¶ 20. The proceedings before the EEOC were fruitless, and so Rivera and his wife filed suit in this Court.

## II. Standard of Review

Summary judgment is appropriate only if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if a "reasonable factfinder could resolve in favor of either party and a material fact is one that could affect the outcome of the case." Flood v. Bank of Am. Corp., 780 F.3d 1, 7 (1st Cir. 2015). At this stage, it is axiomatic that courts "may not weigh the evidence," Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir.1994), and yet must construe the record in the "light most flattering" to the nonmovant. Soto–Padró v. Public Bldgs. Authority, 675 F.3d 1 (1st Cir. 2012). A court must similarly resolve all reasonable inferences in favor of the non-moving party. Tolan v. Cotton, —— U.S. ——, 134 S.Ct. 1861, 1863, 188 L.Ed.2d 895 (2014) (per curiam).

Once the movant properly configures a summary-judgment motion, the burden shifts onto the nonmovant—or "the party who bears the burden of proof at trial," Geshke v. Crocs, Inc., 740 F.3d 74, 77 (1st Cir. 2014)—to "point to competent evidence and specific facts to stave off summary judgment." Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011). So the nonmovant cannot rest on conclusory allegations and improbable inferences. Advanced Flexible Circuits, Inc. v. GE Sensing & Inspection Technologies GmbH, 781 F.3d 510, 516 (1st Cir. 2015). Neither "effusive rhetoric," Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997), nor "arguments woven from the gossamer strands of

---

1. Plaintiffs, however, fail to support their explanation with any citation to the record, which clearly violates this Court's anti-ferreting rule. See Puerto Rico Am. Ins. Co. v. Rivera–Vazquez, 603 F.3d 125, 131 (1st Cir. 2010) (the First Circuit has held "with a regularity bordering on the monotonous that parties ignore the strictures of an 'anti-ferret' rule at their peril.")

speculation and surmise," RTR Technologies, Inc. v. Helming, 707 F.3d 84, 93 (1st Cir. 2013), suffice to forestall the entry of summary judgment. Failure to shoulder this burden "allows the summary judgment engine to operate at full throttle." Lawton v. State Mut. Life Assur. Co., 101 F.3d 218, 223 (1st Cir. 1996).

### III. Analysis

The Complaint in this case contains two claims for relief. See Docket # 1, ¶¶ 1, 22–29, 30–32. Plaintiffs first invoke the Federal Rehabilitation Act, 29 U.S.C. 791, *et seq.*, and charge Defendant with "humiliating" Rivera on the basis of his disability. They also assert that Defendant violated the Rehabilitation Act by firing Rivera before his request for disability benefits on retirement could be processed. Next, Plaintiffs claim that Defendant revealed Rivera's private medical information in violation of the Health Insurance Portability and Accountability Act (HIPAA) and unspecified VA regulations. Plaintiffs say this is a *"per se* tort violation" that is actionable through Puerto Rico's general tort statute, Article 1802 of the Civil Code.

Defendant now moves the Court for summary judgment on Plaintiffs' Rehabilitation Act claim. Defendant argues that this claim must be dismissed because Plaintiffs failed to exhaust administrative remedies before the Equal Employment Opportunity Commission (EEOC) before filing this suit. Defendant further argues that Plaintiffs fail to make out a *prima facie* case of disability discrimination under that statute. Defendant does not move for summary judgment on Plaintiffs' tort claim.

As a threshold matter, the Court tackles Plaintiffs' contention that the Federal Rehabilitation Act does not require a plaintiff to exhaust the administrative remedies contained in Title VII of the Civil Rights Act of 1964. Although neither party discusses the specific basis of Plaintiffs' Rehabilitation Act claim, the same appears to be couched on 29 U.S.C. § 794, which makes it unlawful to deny federal benefits to any qualified individual by reason of that person's disability. This squares up with Plaintiffs' allegation that Defendant fired Rivera before the VA could determine that Rivera was disabled and thus entitled to disability benefits upon his retirement.

The First Circuit has observed that the "Rehabilitation Act provides that claims brought under section 794—unlike those brought under section 791—are governed by the procedural requirements" of Title VI, rather than Title VII, of the Civil Rights Act. Vazquez–Rivera v. Figueroa, 759 F.3d 44, 48 n.2 (1st Cir. 2014). "In theory, then, an individual who brings a claim under section 794 rather than section 791 could avoid Title VII's administrative exhaustion requirement." Id. Unfortunately for Plaintiffs, other circuits "have uniformly held that a federal employee wishing to bring suit under the Rehabilitation Act must first exhaust administrative remedies." Id. While the First Circuit has not yet decided this issue, it has hinted that it would follow the lead of those circuits and hold that exhaustion is indeed a prerequisite to bringing a claim under the Rehabilitation Act. Id. (citing Bartlett v. Dep't of the Treasury (I.R.S.), 749 F.3d 1, 8 (1st Cir. 2014)). The Court sees no reason to depart from the weight of this authority, and shall proceed accordingly.

 Title VII requires a federal employee to exhaust administrative remedies before presenting a discrimination claim in federal court. 42 U.S.C. § 2000e–16(c). This is not a jurisdictional prerequisite, but rather "a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385,

393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). The "heavy burden" of establishing entitlement to equitable tolling rests on the plaintiff. Farris v. Shinseki, 660 F.3d 557, 563 (1st Cir. 2011) (citing Rivera–Gomez v. de Castro, 900 F.2d 1, 3 (1st Cir. 1990)).

The EEOC has issued a series of regulations concerning the proper procedure for channeling a grievance through its administrative framework. The first step is informal consultation, which must be initiated by the aggrieved employee within 45 days of the alleged discriminatory action. 29 C.F.R. § 1614.105(a)(1). If counseling fails, then the employee has 15 days from receipt of notice that counseling has ended to file a formal complaint before the EEOC. Id. at § 1614.106(b). While there are additional requirements, the outline can stop here. In the case at bar, the EEOC found that Rivera failed to comply with this 15–day limit and dismissed his case accordingly. See Notice of Final Agency Decision from EEOC, Docket # 44–16, citing 29 C.F.R. § 1614.107(a)(2)("[EEOC] shall dismiss an entire complaint ... [t]hat fails to comply with the applicable time limits contained in [§ 1614.106]").

Courts have invariably found that, absent a viable tolling argument, a plaintiff's failure to comply with the 15–day deadline bars the plaintiff from bringing such claims to federal court. See e.g. Belgrave v. Pena, 254 F.3d 384, 386 (2d Cir. 2001). The same holds true for the other deadlines imposed by the EEOC regulations. See e.g. Leorna v. U.S. Dep't of State, 105 F.3d 548, 551–52 (9th Cir. 1997) ("Because [plaintiff] failed to timely contact a State Department EEO counselor, she has failed to preserve her right to maintain a suit alleging employment discrimination against the State Department."); Bohac v. West, 85 F.3d 306, 313 (7th Cir. 1996); Lynk v. Henderson, 98 Civ. 2086 (MGC), 2000 WL 178859 at *5 (S.D.N.Y. Feb. 15, 2000) (noting that "[i]n order to exhaust administrative remedies a federal employee must comply with EEOC regulations"). All of these decisions respond to the notion that the purpose of exhaustion requirement is to give the EEOC an opportunity to "investigate, mediate, and take remedial action." Brown v. Coach Stores, Inc., 163 F.3d 706, 712 (2d Cir. 1998). A plaintiff's failure to bring those claims in a timely manner impedes the EEOC's ability to apply its expertise to the dispute, effectively rendering these procedures meaningless. Further, to allow such claims to proceed would "unnecessarily burden courts with cases that otherwise might be terminated successfully by mediation and conciliation." Purtill v. Harris, 658 F.2d 134, 138 (3d Cir. 1981).

■ Here, the EEOC correctly ruled that Rivera's formal complaint was untimely. The record shows that Plaintiff filed an informal complaint with the EEOC on June 13, 2012. See Docket # 44 at ¶ 20. This failed to bear fruit, and thus the EEOC sent Plaintiff a letter through certified mail apprising him that informal counseling was closed. See Docket 44–13. Throughout the letter, the EEOC warned Rivera repeatedly that if he decided to file a formal complaint, he would have to do so "within 15 calendar days." Id. Rivera thus had actual knowledge of this deadline. However, Rivera did not file his formal complaint until months after this deadline had expired. As such, Rivera failed to exhaust administrative remedies prior to filing this suit. See Belgrave v. Pena, 254 F.3d at 386 (affirming district court's dismissal of Title VII and ADEA claims as unexhausted for failure to file formal EEOC complaint within 15 day deadline); Ferrer v. Potter, 2005 WL 1022439, at *9 (S.D.N.Y. May 3, 2005) (dismissing Rehabilitation Act claim for failure to file formal complaint before EEOC within 15 day deadline).

■ While Plaintiffs do not contest that Rivera submitted his EEOC claim beyond the 15–day deadline, they nevertheless maintain that it was timely. First, Plaintiffs cite Brennan v. King, 139 F.3d 258, 267 (1st Cir. 1998) for the proposition that the 15–day deadline applies only to unionized employees. Because Rivera was not a unionized employee, Plaintiffs contend that the 15–day deadline did not apply to him. But Plaintiffs' reliance on Brennan is misplaced, as that case had nothing to do with the 15–day deadline. Rather, the issue was whether a university professor was required to arbitrate certain claims pursuant to a collective bargaining agreement before bringing suit in federal court. On the other hand, the EEOC regulations squarely refute Plaintiffs' argument.

Concerning the effect of the existence of a collective bargaining agreement on EEOC dispute resolution procedures, the EEOC regulations say the following:

> When a person is employed by an agency subject to 5 U.S.C. 7121(d) and is covered by a collective bargaining agreement that permits allegations of discrimination to be raised in a negotiated grievance procedure, a person wishing to file a complaint or a grievance on a matter of alleged employment discrimination must elect to raise the matter under either part 1614 or the negotiated grievance procedure, but not both.

29 C.F.R. § 1614.301 (emphasis added). If there is no applicable collective bargaining agreement, this text implies that 29 U.S.C. § 1614—which contains the 15–day deadline—provides the exclusive avenue for routing a federal employee's discrimination claims. Rivera, therefore, must have filed his formal complaint within those 15 days.[2]

In the alternative, Plaintiffs posit that this entire discussion is moot because, despite the finding of untimeliness, the EEOC notified Rivera of his right to file a civil complaint in federal court. In short, Plaintiffs claim that Defendant is impeded by the doctrine of its own acts from asserting that Plaintiffs did not exhaust their administrative remedies.

■ Once again, Plaintiffs provide the Court with just a single inapposite case in support of their argument. See Docket # 48 (citing Vaqueria Tres Monjitas, Inc. v. Comas, 992 F.Supp.2d 39, 43 (D.P.R. 2013)). In Vaquería, a famous and highly controversial case involving the regulation of milk prices in Puerto Rico, Judge Dominguez reprimanded the Commonwealth for attempting to appeal the approval of a settlement agreement which the Commonwealth itself had freely negotiated, finding that the Government was "judicially estopped from acting against its own actions, that is, the Government cannot untie what it tied under the terms and conditions of the Settlement Agreement." Id. (emphasis added). While Plaintiffs use this case for its convenient phrasing—e.g., that the EEOC "cannot untie what it tied" by sending the right-to-sue letter to Plaintiffs—they do not discuss how the EEOC is judicially estopped from raising their affirmative defense of administrative exhaustion.

Ultimately, Plaintiffs fail to provide the Court with any authority holding that the inclusion of the pro-forma "right to sue" text in the EEOC's letter bars them from

---

**2.** While Plaintiffs argue that the 15 day timeline does not apply, they fail to substitute that deadline for another applicable one. Thus, even if Plaintiffs were right, the Court would be at a loss concerning how much time Rivera had to submit his formal complaint, as the EEOC regulations do not appear to mention another relevant deadline. Given the EEOC's purpose of dealing with discrimination cases in an efficient manner, it is highly doubtful that no deadline would apply.

raising that defense now. This is unsurprising, as every circuit that has considered this issue agrees that "agencies do not waive a defense of untimely exhaustion merely by accepting and investigating a discrimination complaint." Bowden v. United States, 106 F.3d 433, 438 (D.C.Cir. 1997); Boyd v. United States Postal Serv., 752 F.2d 410, 414 (9th Cir. 1985); Belgrave v. Pena, 254 F.3d 384, 387 (2d Cir. 2001); Rowe v. Sullivan, 967 F.2d 186, 191 (5th Cir. 1992) ("In order to waive a timeliness objection, the agency must make a specific finding that the claimant's submission was timely."). The First Circuit applied this principle in Mercado v. Ritz–Carlton San Juan Hotel, Spa & Casino, 410 F.3d 41, 44 (1st Cir. 2005), and found that the EEOC's issuance of right-to-sue letters did not insulate an exhaustion argument "from independent evaluation by the court."

For these reasons, the Court finds that Plaintiffs failed to exhaust their administrative remedies prior to bringing this suit, and have further failed to demonstrate any basis upon which to apply equitable tolling to their mistake.

One loose end remains. Plaintiffs' tort claims for alleged violations of HIPAA and VA regulations are still alive since Defendant failed to move for summary judgment on this point. The Court observes that, since the VA is a federal agency, any tort claim against it must be channeled through the Federal Tort Claims Act. 28 U.S.C. § 2674. Since this statute contains a ·host of exceptions and exclusions to tort liability for the United States, it makes little sense to continue on to trial without properly assessing whether liability exists in this case as a matter of law. For this reason, the Court orders Defendant to submit a brief on this issue within 21 days of the entry of this Opinion. Responses and replies thereto shall be governed by Local Rule 7.

## IV. Conclusion

Plaintiffs failed to exhaust administrative remedies on their Rehabilitation Act claim. The same is therefore dismissed. Further briefing is ordered on Plaintiffs' tort claims, as described above, within 21 days of the entry of this Opinion.

**IT IS SO ORDERED.**